Opinion delivered April 17, 1886.

[No. 3910.]

### E. Holley *v.* The State.

Theft—Fact—Case.—See the statement of the case for evidence *held* inconclusive, and therefore insufficient to support a conviction for cattle theft.

Appeal from the District Court of Hood. Tried below before the Hon. T. L. Nugent.

The conviction in this case was for the theft of four head of cattle, the property of Dave O'Neill, in Hood county, Texas, on the first day of November, 1881. A term of four years in the penitentiary was the penalty awarded.

Dave O'Neill was the first witness for the State. He testified that about October 31 or November 1, 1881, he recovered some cattle which he had previously missed from his range, which range was located about three miles southwest from the town of Granbury, Hood county, Texas. He found them about fifteen miles distant from their accustomed range. Two of the animals referred to were cows, one a brindle, and the other black and

white in color, both branded 58 on the right hip, and marked with a swallowfork in the right ear and a crop off the left ear. Witness looked for those two cows in the summer of 1880, and found them on the range. He looked for them again late in the fall or early in the winter of the same year, but failed to find them. Witness owned the cows described, and knew them by their flesh marks. He knew the defendant at and before the time he recovered his cattle. Having learned where his cattle were, the witness, a few days before he went to get them, met the defendant in the town of Granbury, and told him that he, defendant, had taken his, witness's, cattle. Defendant admitted that he had the cattle, but claimed to have purchased them, and said that he would exhibit his bill of sale, if witness would go to his house on the next day. Witness went to the defendant's house a few days afterwards, arriving in the morning. The defendant was not at home when witness reached his house. Joe Green, who was with witness, and the witness then went to Jordan Rollin's house to inspect one of the cows. On the next day they went again to the house of the defendant, and found him at home. In the conversation which ensued about the cattle, the defendant said that, en route to Fort Worth some time before, he met a stranger whom he had never seen before, who asked about cattle in the same brand which the witness gave; that he told the stranger that he knew where such cattle ranged, and bought the "chance" in them from the stranger. The defendant further said that he knew the cattle and their range before he bought them, and he pointed out the direction and named the branch on which the cattle ranged. He correctly called the branch the Dickey branch, and pointed towards it eastwardly from his house.

In the course of the first conversation referred to—the one which took place in the town of Granbury—witness asked the defendant who executed to him the bill of sale conveying the cattle. He replied that he did not know or remember the man's name. Defendant, at the second conversation mentioned, said that he would get the cattle from Jordan Rollins and return them to witness, if witness would put him to no trouble in the way of getting witnesses, etc., to his transaction with the stranger. Witness replied that he wanted his cattle and nothing more, and that he was going to have them. The defendant then went with witness and Green to Jordan Rollins, and told Rollins to deliver the cattle to witness, and that he, defendant, would

pay him, Rollins for them. Rollins delivered one of the cattle to witness on that day, and another some time later. Defendant, at his house, exhibited to witness a document which he said was his bill of sale to the cattle. Witness did not read the document, but looked at the names of the grantor and witnesses signed to it. He could remember only that the name of Warren was signed as a witness. Witness knew, though, that the names signed to the instrument as grantor and witnesses, were all strange to him. He had never heard of the purported parties before nor since. The defendant said that he did not know the residence of the man from whom he bought the "chance" in the cattle, nor did the witness remember whether the defendant said that he met the man in Fort Worth, or when he was on his way to Fort Worth. The cows had calves when the witness recovered them. Witness's brand, when the animals were recovered, had a bar across it, and the calves were branded ELH on the side. The cattle were in witness's possession when taken, and they belonged to him. They were taken from the witness's possession without his knowledge or consent. Jordan Rollins's place was situated about fifteen miles distant from the range of the cattle. The witness had nothing to do with the institution of this prosecution against the defendant, but was summoned before the grand jury at its term succeeding the recovery of the cattle.

Jordan Rollins, colored, testified, for the State, that he knew the defendant and the witness, Dave O'Neill, and knew them both in 1881. About the first day of November, 1881, Dave O'Neill came to witness's house hunting cattle which he said he had lost. Witness purchased the cows and calves from the defendant in the summer of 1881. One was a brindle and the other a black and white cow, each having a calf. The cows were branded 58 on the right hip, and marked with a swallow-fork in one ear and a crop off the other. The cows described were in the possession of the defendant when the witness got them from him. The cattle were fresh branded ELH when witness got them, which brand was then the defendant's brand. Defendant told the witness to deliver the cattle to Dave O'Neill, which the witness did. Witness saw the cattle on the range a short time before he bought them from the defendant. They were not then in the defendant's brand.

James Stribling testified, for the State, that the defendant was indicted at the March term of the district court of Hood

county, at which time witness was sheriff of the county. Soon after his indictment witness sought him at his house, and throughout the county, for the purpose of arresting him, but could not find him. Witness next saw the defendant in the custody of sheriff Morris in the fall of 1885.

Sheriff B. W. Morris testified, for the State, that he arrested the defendant on the line between Kansas and the Indian Territory; in July, 1885. Defendant was then living at that point, but witness could not say how long he had lived there. The State closed.

Mr. Wooten testified, for the defense, that he had known the defendant for twenty years, during which time his reputation for honesty was good. In March, 1882, witness hired defendant to help him drive cattle to Kansas. Witness sold his cattle to several parties on reaching Kansas, and defendant remained in the employ of the men to whom witness sold.

Cross-examined, witness testified that the defendant had driven cattle to Kansas with him before the spring of 1882, but never before remained in Kansas. He did not take his family with him on that trip.

The motion for new trial raised the question determined by the opinion.

*Cooper & Estes*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for the theft of cattle, the property of Dave O'Neill.

We do not desire to state and comment upon the evidence in this case. Suffice it to say, we do not believe it a safe precedent to permit this conviction to stand. The evidence, in our opinion, is not of that character—not of such force and clearness—as will justify this conviction. (The Reporters will state the evidence in full.)

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*