## G. E. DANIEL V. THE STATE.

### No. 843.   Decided December 7, 1910.

**Theft of Cattle—Explanation—Possession—Insufficiency of the Evidence.**

Where, upon trial of theft of cattle, the defendant gave a reasonable ex-
planation of his possession, and which was brought out by the State and
which it did not prove to be false the conviction could not be sustained.

Appeal from the District Court of Archer. Tried below before the
Hon. A. H. Carrigan.

Appeal from a conviction of theft of cattle; penalty, two years
imprisonment in the penitentiary.

The opinion states the case.

*Montgomery & Britain* and *L. H. Mathis,* for appellant.—Cited
cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for cattle
theft under substantially the following statement of facts: Appel-
lant and Eckert owned a meat market in the city of Wichita Falls.
Appellant made a trip to Dundee, in Archer County, and bought a
lot of cattle to be disposed of through their market to the customers
of himself and Eckert. Returning from Dundee appellant reached
the little railroad station of Holliday and stopped for the night,
penning his cattle and feeding them. He was about the town and
seen about the hotel and around the pen where his cattle were. The
next morning he drove the cattle to the town of Wichita Falls, a
distance of fourteen miles. The owner of the alleged stolen animal,
W. H. Taylor, testified he owned the animal mentioned in the in-

dictment, and that it had been raised in the little town of Holliday, a place of some 150 or 200 people. Some days after appellant left Holliday with his cattle Taylor missed his animal. Failing to find it he went to Wichita Falls and visited a house that purchases hides, but failed to discover any evidence. He then went to the place where appellant and Eckert kept their cattle for slaughter, about a mile or such matter from town, and found his animal. He was accompanied by Jot Smith, a deputy sheriff, whom he had met on the train en route to Wichita Falls. Immediately upon discovering the animal he went to the justice of the peace and made complaint against appellant charging him with theft of the animal. The following day he met appellant on the street and the matter came up for discussion, in which conversation appellant informed Taylor that he had bought the animal and had taken a bill of sale in the form of a receipt from a man named Feld, paying for the animal the sum of $28. He also stated that he borrowed the money used in paying for the animal from his brother-in-law, Dysett. He did not have the receipt or bill of sale with him at the time, but stated that he had it at his residence. Appellant stated that when he went to his house he would bring the paper with him. The evidence is in some doubt as to whether appellant went home at the time or going home forgot to bring it or failed to find it. The evidence along this line is somewhat confused. When arrested he gave bond to appear before the justice of the peace at an examining trial. At the examining trial he turned over the receipt or bill of sale to the district attorney, who thereafter kept it. Appellant did not have the bill of sale afterwards, it seems from the record, and so far as the statement of facts shows the district attorney still has it. Mr. Taylor, the alleged owner, testified that he examined the books of Eckert and appellant and found a date corresponding with appellant reaching Wichita Falls, showing entry of the purchase of the animal, and the price paid for it, and immediately below this entry was another showing appellant bought some eggs and butter, for which the entry showed $8.25 was paid. Other entries followed these two. These entries seemed to have been made the same day that appellant reached Wichita Falls with the cattle. It is also shown that appellant gave instructions that the animal should not be killed until after the other animals were butchered. The animal was missed on Friday, and on the following Saturday week Taylor found it in the enclosure as before stated. There was no mutilation of the marks on the animal in any way, no disfiguring of brands, and nothing to indicate the secreting of the property or hiding it. The order from appellant deferring butchering the steer seems to have been given for the reason that it was not in as good condition for the market as the others, and he desired to feed it as long as possible in order to improve it for butchering purposes. Mr. Taylor testified that he had never heard of a man named Feld in or about the little town of Holliday, and if there was any

such man in that neighborhood he had never heard of it, and that he had made some inquiry. This is practically the State's case. The defendant offered no evidence. There are some questions arising on the record which we will not discuss.

It is urgently insisted that this evidence is not sufficient to justify appellant's conviction inasmuch as his account of his possession was not shown to be false. We are of opinion that this contention is correct. Appellant's explanation of it was, we think, reasonable. His manner of handling the animal, his driving it in the broad daylight from Holliday to Wichita Falls and putting it in the pasture where it was, his statements that he borrowed the money from his brother-in-law with which to purchase it, want of disfiguration of the animal, want of concealment or any evidence of hiding, the entries on his books, in our judgment, show that his explanation was reasonable and called for a disproval by the State in order to ask for a conviction. Loving v. State, 18 Texas Crim. App., 459; Holley v. State, 21 Texas Crim. Rep., 156, 17 S. W. Rep., 159; Cudd v. State, 25 Texas Crim. App., 666, 8 S. W. Rep., 814; Porter v. State, 45 Texas Crim. Rep., 66, 73 S. W. Rep., 1053; Brothers v. State, 22 Texas Crim. App., 447; Clark v. State, 22 Texas Crim. App., 599. These are enough cases to show the correctness of the position above stated. Judge Hurt pertinently states the matter in Loving v. State, supra, as follows: "The State's case is, therefore, simply one of recent possession with reasonable explanation with no proof by the State of the falsity of the explanation. This being the case, the evidence is not sufficient to convict, and hence the verdict of the jury was not supported by the evidence." Judge Hurt further adds this expression in the opinion: "The explanation being reasonable, the State must prove it to be false." This we understand to be the rule wherever recent possession is relied upon and reasonable explanation has been made. If the State does not prove it false, the accused must go acquitted. The theory of the State seems to have been that appellant should sustain all of his statements by evidence, and the district attorney commented upon the fact that appellant did not undertake to prove his innocence by introducing his brother-in-law, Dysett, from whom he stated he borrowed the money with which to pay for the animal. There was a question raised in the record as to this argument, that it was unfair and illegitimate. Without going into a discussion of that phase of the matter, the State was in error in this position. The accused does not have to prove his innocence. The law presumes that, and the State must overcome that presumption to the exclusion of the reasonable doubt. If the State desired to disprove the statement of appellant, it should have done so. Appellant was not called upon to place witnesses upon the stand unless he desired and was not required to do so to prove his innocence. The State having introduced those declarations and statements, they were bound by same unless they were disproved.

Believing that the evidence is insufficient to warrant this conviction under this record, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*